**WESTERN COLORADO FRUIT GROWERS ASSOCIATION, INC., a Colorado Corporation, Plaintiff,**

v.

**F. Ray MARSHALL, United States Secretary of Labor, Floyd Edwards, Regional Administrator of United States Department of Labor (Region VIII), United States Immigration and Naturalization Service, Defendants.**

**Civ. A. 78–A–1022.**

United States District Court, D. Colorado.

July 11, 1979.

Nelson, Hoskin, Groves & Prinster by John W. Groves, Grand Junction, Colo., for plaintiff.

Joseph F. Dolan, U. S. Atty. by James P. Gatlin, Asst. U. S. Atty., and Donald R. McCoy, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This matter comes before me now on plaintiff's motion to dismiss defendants' counterclaim. Briefs have been filed and neither party has requested oral argument. This case is one of two fiercely contested lawsuits involving plaintiff's efforts to obtain migrant labor for seasonal work in the western Colorado fruit orchards. *See Jones v. Edwards,* Civ. Action No. 79–A–337 (D.Colo., Memorandum Opinion and Order filed April 24, 1979). Plaintiff is a voluntary association of fruit growers situated on Colorado's western slope. Defendant Marshall is the Secretary of Labor; Defendant Edwards is the Regional Administrator for the Department of Labor Employment and Training Administration; Defendant Immigration and Naturalization Service is an agency in the Department of Justice.

I

Pursuant to the Wagner-Peyser Act, 29 U.S.C. § 49, *et seq.,* the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.,* and related regulations, an employer may file a clearance order (which is a job offer) with the Department of Labor. If approved, Labor officials aid in matching available employees with the employer. This matching takes place on a local and statewide level through the services of state officials, then through an interstate clearance system, and, if sufficient domestic labor is unavailable and certain other conditions are met, the federal government recruits alien labor. The workings of this system are set out in greater detail by the courts in *Frederick County Fruit Growers' Association, Inc. v. Marshall,* 436 F.Supp. 218 (W.D.Va.1977), *The Elton Orchards, Inc. v. Brennan,* 508 F.2d 493 (1st Cir. 1974), and *Jones v. Edwards, supra.*

Plaintiff filed clearance orders for 345 workers with Edwards' office in Denver on September 28, 1978. Rural Manpower Job Offer and Temporary Labor Certification Assurances, supplementing the clearance orders, were filed on October 2, 1978. By letter of the same date Edwards rejected the proffered clearance orders as deficient and refused to certify a shortage of domestic labor. Plaintiff then filed this action.

The complaint sought an injunction forcing defendants Marshall and Edwards to certify a shortage of domestic labor, thereby enabling the Immigration and Naturalization Service (INS) to admit alien labor. After a hearing on October 2, Edwards commenced recruitment of *domestic* labor based on the aforementioned clearance order and manpower assurances. As detailed more fully, *infra,* this recruitment effort led to alleged violations by the plaintiff of the job offer, assurances, and related regulations. Defendants filed a counterclaim seeking redress for those alleged violations. The motion for a temporary restraining order was ultimately denied without prejudice. The fall, 1978, harvest season has long since passed and plaintiff's complaint is now moot. *See* Plaintiff's Pretrial Statement at 5, ¶ 5(a)(1).

The counterclaim is still pending, however, and is the subject of the instant motion to dismiss. For purposes of this motion I must assume the facts as alleged by the defendants to be true. Defendants allege

that plaintiff breached the terms of the clearance order and assurances and the terms of 20 C.F.R. Part 655 (1978), which govern such clearance orders and assurances. More specifically, plaintiff allegedly failed to advance transportation and subsistence costs,[1] failed to employ workers recruited at government expense, failed to provide housing for some workers, failed to pay the guaranteed hourly wage of $3.36, failed to employ the workers for at least 75% of the contract period, employed foreign workers on terms more favorable than those for domestic workers, and failed to cooperate with the employment service system established by the Department of Labor under 29 U.S.C. § 49, *et seq.*

As a result defendants assert one counterclaim which includes essentially three claims for relief, as follows: $35,806.95 in costs incurred by the Secretary of Labor to transport, house, feed, and pay the workers plaintiff did not transport, house, feed, or pay; an undetermined sum of money in overdue wages owing to workers who were paid less than $3.36 per hour; and an injunction prohibiting non-compliance or interference with defendants' administration of the statutes, 8 U.S.C. § 1182, *et seq.*, 29 U.S.C. § 49, *et seq.*, and related regulations.[2] Plaintiff has moved to dismiss the first and second, or monetary, counterclaims for failure to state a claim on which relief can be granted, lack of standing, failure to join indispensable parties, and because defendants are not the real parties in interest. Plaintiff seeks dismissal of the third, or injunctive, counterclaim insofar as it rests on plaintiff's alleged failure to comply with 20 C.F.R. § 655 (1978) because the regulation is allegedly not reasonably related to the accomplishment of the purposes of the statute under which it was promulgated. I will treat each contention separately.

## II

In their pretrial statement and at the pretrial conference defendants described their claim for $35,806.95 as a claim for losses due to plaintiff's breach of the job offer, or contract, and for losses due to plaintiff's violation of 20 C.F.R. §§ 655, *et seq.* Each aspect of this description warrants separate consideration.

## A

■ Plaintiff's clearance order is essentially an offer for a contract of employment. The offer is accepted by going to the western slope and reporting to "the Mobile Trailer Office—Mr. Hugh McDonnell—Eckert, Co.—303–835–3195" as per item 15 of the offer. By its terms the offer could be accepted only by "individual workers." Neither INS nor the Department of Labor are "individual workers" who could have accepted the offer. Secretary Marshall and Administrator Edwards are individuals who could have accepted the offer, but the counterclaim contains no allegation that they did or tried to do so. Indeed, the counterclaim contains no allegations which are in any way susceptible of a construction which might be read as establishing a contractual relationship between plaintiff and any of the defendants. Department of Labor regulations, moreover, preclude the creation of any such contractual relationship:

Nor does any job order accepted or recruited upon by the [Employment Service] constitute a contractual job offer to which the [Employment and Training Administration] or a state agency is in any way a party.

20 C.F.R. § 653.108(b)(1) (1978).

I find that the counterclaim fails to state a claim in contract on which defendants might be entitled to reimbursement for $35,806.95.

## B

As to the violations of 20 C.F.R. Part 655 (1978), the regulations do not expressly provide defendants with the cause of action

---

**1.** *But see Jones v. Edwards, supra.*

**2.** In order to avoid confusion I shall refer to each of the claims as the first, second, and third counterclaims, respectively, even though defendants have lumped the three claims under one denominated counterclaim.

asserted. Rather, the defendants would have this court imply a right to sue for damages due to the alleged regulatory violations.

In *Gomez v. Florida State Employment Commission*, 417 F.2d 569 (5th Cir. 1969), the court held that migrant workers who accept private employment through the interstate clearance system have an implied federal cause of action against both the employers and the government employment agency employees when the minimum standards set forth in the clearance order and regulations are not met. The court left no doubt that the key reason for its holding was one of the Wagner-Peyser Act's statutory purposes—that of protecting migrant laborers. 417 F.2d at 572. Again, none of the defendants are migrant workers and none of the defendants accepted employment through the interstate clearance system. The rationale of the *Gomez* case is wholly inapplicable to the instant situation. Other cases cited by defendants, *see, e. g., Jenkins v. S & A Chaisson & Sons, Inc.*, 449 F.Supp. 216 (S.D.N.Y.1978) (and cases cited therein), are similarly cases where the courts have allowed the workers a private cause of action for damages.

The Supreme Court has set forth standards for deciding when and under what circumstances causes of action may be implied in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See also Cannon v. University of Chicago*, —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and *Kodish v. United Airlines, Inc.*, 463 F.Supp. 1245 (D.Colo.1979). I question whether the public defendants, counterclaiming here in their official capacities and not as private citizens, can even bring themselves within the ambit of the *Cort* court's standards for implying private causes of action. I pass that question, however, because I find that the *Cort* test leads inexorably to only one conclusion: no right of action may be implied on the facts of this case.

■ *Cort* requires analysis of four questions. First, do defendants fall within the class of persons whom the statute was in-

tended to benefit? Second, is there any indication of legislative intent? Third, is an implied cause of action consistent with the underlying purposes of the legislative scheme? Fourth, is the cause of action one traditionally relegated to state law? 422 U.S. at 78, 95 S.Ct. 2080. Each will be addressed in order.

■ 1. I find that the Secretary of Labor, the Employment and Training Administrator, and the INS are not intended beneficiaries of the interstate clearance system. The system is designed to bring two parties together: employers who have jobs and employees who need jobs. *See Petersen v. Talisman Sugar Corp.*, 478 F.2d 73 (5th Cir. 1973), and *NAACP, Western Region v. Brennan*, 360 F.Supp. 1006 (D.D.C.1973). Defendants, along with their state counterparts, are simply the intermediaries, the media by which the employers and employees may find each other. 29 U.S.C. § 49b. The beneficiaries are the employers and employees, not the public servants.

2. There is no indication of legislative or administrative intent to allow claims such as the one asserted here. The Wagner-Peyser Act, 29 U.S.C. § 49, *et seq.*, simply creates the United States Employment Service. 20 C.F.R. Parts 653 through 658 (1978) implement the interstate clearance system by detailing, *inter alia*, the labor certification process for temporary employment of aliens in the United States. *See* Part 655. This statutory and regulatory scheme envisions the Department of Labor as a clearinghouse for matching jobs with job-seekers and recruiting workers. There is nothing in either the statute or the regulations which could possibly be construed as authorizing the defendants to perform plaintiff's contract in plaintiff's place without plaintiff's consent, and then turn around to sue plaintiff for the resulting loss to defendants.

3. The purpose of the statutory scheme is to match employers and employees, *Petersen v. Talisman Sugar Corp., supra*, and *NAACP, Western Region v. Brennan, supra*, and to protect migrant workers from overreaching employers and government of-

ficials, *Gomez v. Florida State Employment Commission, supra.* Allowing defendants to recover under this claim will neither facilitate the process of matching employers and employees nor achieve restitution for the slighted workers. The latter purpose is achieved, as illustrated by *Gomez*, by allowing the workers a private right of action against the overreaching employer and government official. I find that an implied cause of action would not be consistent with the underlying purpose of the clearance system.

4. The fourth *Cort* factor is not relevant to this particular claim. The point to be made is not so much whether this type of claim is traditionally left to state or federal law as whether the defendants were ever statutorily or contractually authorized to perform plaintiff's contract in the first place. The counterclaim alleges no contractual authorization and I am unable to find any statutory or regulatory authorization.

I conclude that the test in *Cort v. Ash, supra,* has not been met and that defendant's counterclaim for $35,806.95 fails to state a claim on which relief can be granted pursuant to the *Cort* test.

### C

Defendant's argument in opposition to the motion relies rather heavily on the notion that the government's regulatory scheme would be rendered meaningless if the government is not allowed to enforce the system through this counterclaim. To the extent the migrant laborers do not themselves come forward in defense of their rights, I agree with defendants' premise, but not the conclusion. As will be discussed in Part IV, *infra*, the government does have an avenue of relief through the counterclaim for an injunction. If an injunction is granted the government will have access to the awesome powers of contempt to aid in the enforcement of the terms of the injunctive order.[3]

*Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), cited by defendants, is also inapposite. The statute and regulations under consideration in *Wyandotte Transportation* specifically authorized the United States to take affirmative action which would necessarily involve the expenditure of funds. 389 U.S. at 206–07, 88 S.Ct. 379. I am not unsympathetic to the obvious humanitarian reasons for defendants having come to the aid of the workers and provided housing for them. That humanitarian concern cannot, however, justify a lawsuit to recover the unauthorized expenditure of funds. Defendants would have been better advised to help the workers find legal assistance in bringing an action for injunctive relief, either in state court on the contract or in federal court pursuant to *Gomez v. Florida State Employment Commission, supra.*

I find that the first counterclaim fails to state a claim on which relief can be granted.

### III

Defendants' theory of recovery under the second counterclaim can be characterized as a suit for breach of plaintiff's contract with the migrant laborers, brought by the government on behalf of those workers. This is apparently the *in loco parentis* approach to litigation by which, Uncle Sam, *parens patriae*, sued as next friend of his nieces and nephews who labored in the apple orchards last fall. The end is noble but the means find no justification under the Federal Rules of Civil Procedure.

Rule 17(a) provides that

Every action shall be presented in the name of the real party in interest. An executor, administrator, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for

---

**3.** An action for damages is also not necessary to insure compliance with the constitutional concerns expressed in *NAACP, Western Re-*

*gion v. Brennan, supra.* ·The avenue of injunctive relief should give defendants ample leeway for assuring such compliance.

whose benefit the action is brought; and when a statute so provides, an action for the use or benefit of another shall be brought in the name of the United States.

Working through this sentence backwards, there is no statute providing for or allowing this action for the benefit of the migrant workers. There is no statute allowing the United States to sue in its own name. The counterclaim contains no allegations from which I might find the existence of a contract between plaintiff and the United States for the benefit of the migrant workers, *see* part IIA, *supra*, an express trust, a bailment, or an estate which has been placed in the control of an executor or administrator. Defendants can maintain this counterclaim, then, only if they are the real party in interest.

The real party in interest requirement can be stated another way: one may not ordinarily assert the rights of others. *Ripon Society v. National Republican Party*, 173 U.S.App.D.C. 350, 356, 525 F.2d 567, 573 (1975), *cert. denied* 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976). The purpose of the rule is to protect litigants from potentially conflicting results in a second lawsuit brought by one not a party to the original action. *Pacific Coast Agricultural Export Association v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975), *cert. denied* 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976). For example, suppose plaintiff were to win a trial on the merits of the counterclaim in the instant action. One of the migrant laborers might subsequently bring his or her own action for breach of contract or pursuant to *Gomez, supra*, and the prior judgment would have no collateral estoppel effect because the worker was not a party to the first lawsuit. This is the very result Rule 17 was designed to avoid. *See also White Hall Building Corp. v. Profexray Division of Litton Industries, Inc.*, 387 F.Supp. 1202 (E.D.Pa.1974), *affirmed*, 578 F.2d 1377 (3rd Cir. 1978). I find that defendants are not the real party in interest.

Contrary to defendants' assertions, the case at bar is not analagous to *Woods v.*

*Bomboy*, 179 F.2d 565 (3rd Cir. 1950). In that case the "Housing Expediter" was given explicit statutory authority to sue on behalf of the injured tenants. *See also Woods v. Trbusek*, 83 F.Supp. 175 (S.D.N.Y. 1949). No such statutory authority exists for the defendants here to sue on behalf of the migrant workers.

My finding that defendants are not the real party in interest, however, does not end the matter. The second sentence of Rule 17 provides that

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest.

Defendants filed their counterclaim on December 1, 1978. Plaintiff made its first formal objection on April 27, 1979. *See* Plaintiff's Pretrial Statement at 3–4. The instant motion was actually filed on May 21, 1979, although it was discussed by the parties and the court at the pretrial conference in April. Over two months have thus elapsed since objection was first made and no person has ratified commencement of this counterclaim or joined the lawsuit. I find that is a reasonable time for ratification, joinder, or substitution. Accordingly, this aspect of the counterclaim will be dismissed.

## IV

Defendants' final counterclaim seeks injunctive relief prohibiting plaintiff from interfering with defendants' administration of the interstate clearance system. Plaintiff's motion to dismiss this claim is based on the particularity requirement of Rule 65(d) of the Federal Rules of Civil Procedure:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.

I agree that if defendants' prayer for the injunction were made into the order grant-

ing the injunction, then the result would fall far short of these standards for particularity and specificity. The prayer is not an order for injunction, however, and Rule 65(d) is addressed only to the order granting an injunction. Under our system of notice pleading the counterclaim adequately places plaintiff on notice of the area into which defendants will inquire at trial. The equitable nature of injunctive relief, moreover, renders such claims particularly unsuited for disposition in a motion to dismiss, where the equities of the situation are not before the court.

Plaintiff also argues that insofar as the request for injunctive relief is based on its failure to comply with 20 C.F.R. Part 655 (1978), the counterclaim should be dismissed because the particular regulations involved are not reasonably related to the statutory purpose. I have already heard enough evidence in the two western slope fruit cases to know that what the regulations say and what defendants claim the regulations say may be two entirely different matters. *See, e. g., Jones v. Edwards, supra.* Similarly, it seems entirely possible that further discrepancies between the regulations as written and as applied may arise in the trial on the merits of this case. These potential discrepancies are, as is injunctive relief in general, peculiarly factual questions and thus unsuited for disposition by motion to dismiss. While I do not intend to preclude plaintiff from raising this defense at trial, I am not prepared to say the defense precludes the counterclaim as a matter of law. The motion to dismiss this third counterclaim will, accordingly, be denied.

V

I have concluded that plaintiff's motion to dismiss for failure to state a claim on which relief can be granted and for failure to join the real party in interest should be granted as to the counterclaims for $35,806.95 reimbursement and for wages due the migrant workers. The motion should be denied as to the counterclaim for injunctive relief. Since the only claim remaining is equitable in nature plaintiff's request for a jury trial is denied. It is therefore

ORDERED that plaintiff's motion to dismiss be, and the same hereby is, granted as to defendants' counterclaims for $35,806.95 and for relief on behalf of the migrant laborers; it is further

ORDERED that defendants' counterclaims for $35,806.95 and for relief on behalf of the migrant laborers be, and the same hereby are, dismissed; it is further

ORDERED that plaintiff's motion to dismiss be, and the same hereby is, denied as to defendants' counterclaim for injunctive relief; it is further

ORDERED that plaintiff's request for trial by jury and plaintiff's request for trial in Grand Junction, Colorado, be, and the same hereby are, denied; and it is further

ORDERED that the parties submit a supplemental pretrial order within twenty days from the date of this order; the supplemental pretrial order *shall* include a specific cut-off date for discovery, a specific estimated trial time, specific lists of witnesses and exhibits which, of course, may be supplemented until shortly before the trial date, and a revised statement of the contested issues of law and fact in light of this opinion.