Ceferino LOPEZ–RIVAS, Samuel Villegas-Rodriguez, Jesus M. Morales-Marrero, Heriberto Lopez-Rodriguez, Felix Figueroa Caraballo, Norberto Maldonado Santiago, Daniel Torres, Julio Rivera, Edwin Limardo, William Cruz Romero, Rene Troche Torres, Israel Vazquez Vazquez, Jose A. Valentin Torres, Carlos Ortiz Rodriguez, Wilfredo Justiniano, Francisco Rosa Diaz, Francisco Figueroa Montalvo, Luis Felix, Alberto Berrios Gonzalez, Samuel Alejandro Montes, Jose L. Gomez Vazquez, Epifanio Santos Gonzalez, William Ubiles Rivera, Anibal Colon Torres, Angel Luis Olmeda Reyes, Pedro Gonzalez Otero, Jose A. Rodriguez, Frumencio Matos Rodriguez, Leonardo Ramos Melendez, Arcadio Medina Martinez, Benito Sanchez Massas, Luis Rosado Ramos, Concepcion Lebron Burgos, Ramon Luis Romero, David Rivera Solero, Jose F. Torres Flores, Pedro Rios Ortiz, Jose Manuel Rodriguez, Hector L. Gonzalez, Rigoberto Cruz De Jesus, Carmelo Neris Munoz, Valentin Plaza Ramos, Gilberto Cordero Vazquez, Jose O. Ayala Santos, Plaintiffs,

v.

Raymond DONOVAN, Secretary of Labor of the United States in his official capacity, Ray D. Rinker Estate, C.L. Robinson, Moriello Brothers, Altamont Orchards, James B. Swing, Henry Brumback, Fay Marker Miller, Eugene R. Coy, William A. Coy, Wayne McInturff, Defendants.

Civ. No. 78–2175CC.

United States District Court, D. Puerto Rico.

Feb. 28, 1986.

Julio M. López-Keelan, Leopoldo Rivera-Rodríguez, P.R. Legal Services, Inc., Río Piedras, Puerto Rico, for plaintiffs.

Jorge L. Martínez, Goldman & Antonetti, Santurce, Puerto Rico, Eduardo Toro, Asst. U.S. Atty., Hato Rey, Puerto Rico, for defendants.

## MEMORANDUM OPINION AND ORDER

CEREZO, District Judge.

This complaint was filed on November 3, 1978, originally as a class action on behalf of approximately 1100 Puerto Rican migrant workers against approximately 102 individual and corporate defendants and the United States Secretary of Labor. The private defendants were various individuals and entities dedicated to commercial apple growing in several East Coast states (N.Y., W.Va., Va., and Md.) (apple growers). The action is premised on federal question jurisdiction, namely, violations to The Wagner-Peyser Act and its regulations, 29 U.S.C. Section 49 *et seq.* and 20 C.F.R. 651.1 *et seq.* (1978); the Immigration and Nationality Act, 8 U.S.C. Sec. 1101 *et seq.*, and the Civil Rights Act, 42 U.S.C. Sec. 1981. Summons were served on the Puerto Rico Secretary of State for all out of state private defendants and the Secretary of Labor was served through one of its attorneys. Motions to dismiss and for summary judgment for lack of personal and subject matter jurisdiction, venue, failure to state a claim and for defective service of process were filed and their ensuing oppositions and replies. Motions for severance by the private defendants and for lack of prosecution by the Secretary of Labor for failure to serve process correctly were also filed and opposed.

In the midst of these filings plaintiffs moved to amend and tendered an amended complaint on May 2, 1979 as well as a motion for voluntary dismissal in which they drop the class action and reduce the number of plaintiffs to about forty and that of defendants to eleven. No ruling was ever made on the filing of this amended complaint nor on the other motions while the case was assigned and reassigned to several judges until it reached our docket. Magistrate Arenas, upon referral by one of the prior judges, issued a "Hearing Report and Order" granting plaintiffs ten days to file an amended complaint, applying the previous Rule 12(b)(2) attacks to the

previous complaints to the soon to be filed amended complaint. He gave the parties thirty days to "resolve the matter of severance without necessity for our intervention" and stated that once the Secretary of Labor was properly served he could renew his motion to dismiss. On October 22, 1984 plaintiffs filed their second amended complaint and a renewed opposition to the lack of personal jurisdiction argument of the motion to dismiss. The Clerk, however, considered plaintiffs' amended complaint as one which the court had not authorized, despite the Magistrate's ruling, and crossed out the "filed" stamp on the document and wrote "tendered." Plaintiffs then filed a motion requesting that the court order the amended complaint filed so that they could serve summons on the Secretary of Labor.

Plaintiffs' last amended complaint does not differ much from the amended complaint of May 1979, except for the substitution of some of the plaintiffs and the elaboration of their claims which essentially allege defendants' failure to transport plaintiffs from Puerto Rico to the states and hire them. Plaintiffs claim that defendant apple growers somehow "hired" them merely by placing job offers for farm labor in the interstate job offer clearance system created by the Wagner-Peyser Act. They allege that defendants were aware that the job offers would circulate in Puerto Rico and that the Puerto Rico Department of Labor would act as their agent and would actively recruit them. Notwithstanding this "awareness," plaintiffs allege the defendants never withdrew "their clearance orders from circulation nor otherwise act to stop the recruitment of workers by" the Puerto Rico Department of Labor. However, plaintiffs were *never* hired for the harvest and now claim that they were left stranded in Puerto Rico suffering mental damages, loss of income and expenses incurred in preparation for their trip to the United States. The action against the United States Secretary of Labor appears to be some sort of mandamus-type claim for failure to fulfill official duties under the Wagner-Peyser Act and the Immigra-

tion Law and for the Secretary's canceling of the migrant worker referral program for Puerto Rico workers and the transportation of plaintiffs to the United States due to problems with prior hired workers for the 1978 apple harvest. Squeezed in between these claims is a civil rights action based on a series of acts allegedly made by some of the defendants and other apple growers against other migrant workers, not parties to this action, who did go to the farms or who were in fact hired, which plaintiffs contend show a pattern of discrimination against Puerto Rican migrant workers that culminated in defendants' failure to hire any more Puerto Rican workers for the 1978 harvest.

Defendants' challenge the court's exercise of personal jurisdiction over them because, except for the filing of job offers in the Interstate Clearing System pursuant to 20 CFR 653.108(c)(7), (d)(3) (1978), they did not designate the Puerto Rico Labor Department to act as their agent; they specifically requested in the job offers circulated that candidates be referred to their state local employment office or to them; they never requested that their offers circulate in Puerto Rico and were told by the U.S. Employment Agency that they would not. Defendants argue that finding jurisdiction under these circumstances would offend the minimum contacts due process requirements. Plaintiffs counter pointing to several opinions of the Superior Court of Puerto Rico finding the existence of personal jurisdiction over out of state growers based on the circulation of the job offers in the clearance system *and* the designation of the Puerto Rico Labor Department as hiring agent. They argue that by placing the job offers in the clearance system defendants *had* to know that the Puerto Rico Department of Labor would place ads in newspapers and recruit migrant workers in Puerto Rico and that these acts made the Puerto Rico Department of Labor some sort of agent for defendants, thus submitting them to Puerto Rico's jurisdiction per Puerto Rico's Rule of Civil Procedure. Rule 4.7(a)(1). Venue is challenged on

grounds that the migrant workers' contracts would be executed and performed outside of Puerto Rico. Defendants' request for severance is based on the failure of the claims and defendants joined to meet the requirements of Rule 20(c) Fed.R.Civ.P. because plaintiffs cannot seek relief jointly, severally or in the alternative from all of the defendants but each must seek relief from the particular defendant who allegedly hired him. Finally, defendants challenge the court's subject matter jurisdiction because the complaint does not plead a plausible claim under the Wagner-Peyser Act, the Immigration and Nationality Act or the Civil Rights Act.[1] Regardless of the validity of defendants' venue, personal jurisdiction or severance arguments, the court considers the challenge to our subject matter jurisdiction as fundamental and dispositive of plaintiffs' claims against the apple growers even when viewed against plaintiffs' latest tendered-amended complaint, which, for purposes of this analysis, we consider filed.

Defendants contend that the complaint rests on mere conclusory allegations which when challenged reveal that there are no substantial claims with respect to any of the federal laws in question. Defendants support their position by sworn statements in which all state that they did not appoint the Puerto Rico Department of Labor or any Puerto Rico employment agency to act as their recruiting agency nor did they receive any communication from plaintiffs with respect to the job offers they admittedly circulated during the 1978 apple harvest. Defendants also bring forth copies of the Employment Security Manual of the U.S. Employment Service which indicates that there are several methods of recruiting workers, one of them being by an express written delegation whereby a local agency, such as the Puerto Rico Department of Labor, is specifically designated through the filing of a special form as recruiting agent and given the faculty to bind the employer in an employment relationship with job applicants. They indicate that they did not designate any recruiting agent through the special form provided, or otherwise, and that even in the job offers which circulated in the clearance system and eventually reached Puerto Rico, they specifically requested that interested applicants were to be referred to them directly or to their state employment office. Defendants point to the lack of any allegations that plaintiffs contacted them in any way and add by sworn statements that no such contact was ever made. Plaintiffs did not refute defendants' sworn statements nor did they present any significant documents or assertions to question these jurisdictional facts. Their defense rests on the pleadings. The true jurisdictional foundation of their claim is that any job offer placed in circulation through the Wagner-Peyser clearance system binds an employer to offer employment to every applicant who accepts it at any one of the local employment offices where it circulates and that employers are "aware" of this when they place their offers.

We have examined the Wagner-Peyser Act, its regulations and applicable caselaw and find no support for such proposition. The adoption of plaintiffs' position would create the anomaly of employers having to

1. For clarity of the record, the motions being ruled upon in this Opinion and Order are the following: defendants' motion to dismiss and to deny class status of February 15, 1979 and its opposition and replies of February 28, 1979, May 7, 1979, May 29, 1979 and January 31, 1985; defendants' motion to sever of June 7, 1979, the opposition of July 11, 1979 and reply of August 13, 1979 and the motions to amend the complaint of May 2, 1979 and December 3, 1984 and their request for voluntary dismissal of May 11, 1979. Defendants Ledgetop Farms, Jackson Orchards, Inc. also filed motions to dismiss and to deny class certification and later for summary judgment; see motions of February 20, 1979, April 19, 1979. However, since plaintiffs' latest complaint does not include these defendants and does not bring forth any claims as a class, the motions of these former defendants, as well as the class action issue, are moot. The defendant apple growers also filed on May 29, 1979 a motion to dismiss for lack of jurisdiction on grounds that this action should have been filed in the Court of Claims. In view of our ruling herein and our separate order dealing with remaining defendant, the Secretary of Labor, we make no pronouncements on this matter.

hire hundreds, perhaps thousands of workers because their job offers for a limited number of positions were accepted unilaterally, without their knowledge, by applicants throughout the nation. We need not dwell any further on the absurdity of this notion, not to mention its due process implications and the unhealthy state-federal and state v. state tensions it would create. Plaintiffs' interpretation is not supported by the Act, the record, or agency and contract law.

■ The clearance system created by the Wagner-Peyser Act is one designed to *match* job offers throughout the nation with applicants for employment. 20 C.F.R. Sec. 651.1, 653.108(b)(1) (1978); *Elton Orchards, Inc. v. Brennan*, 508 F.2d 493, 495 (1st Cir.1974); *Gómez v. Florida State Employment Service*, 417 F.2d 569, 571 (5th Cir.1969); *Compare Nieto-Santos v. Fletcher Farms*, 743 F.2d 638 (9th Cir. 1984). Employers place job offers with participating state employment agencies who, in turn, circulate the offers first locally and then through the states and territories participating in the interstate clearance system, if local workers are not available. *Elton Orchards*, 508 F.2d at 495. If after the offer circulates nationwide there are still no domestic workers available, the employer may resort to the hiring of temporary alien workers in accordance with the requirements of the Immigration and Nationality Act. The content of these job offers or "orders" is highly regulated as to nature and duration of work, date of commencement, wages, etc. 20 C.F.R. Sec. 653.108. The workers must file with their participating local employment service agency applications indicating their skills and experience which are retained by these agencies and "matched" with job orders. According to the U.S. Employment Service Training Manual the "matching" or recruiting takes a variety of forms such a: positive recruitment, direct referral, telephone referral, mail referral and delegated hiring authority. The "delegated hiring authority" method is the method used by those employers who want the employment agencies to do the actual hiring of applicants instead of limiting their service to the usual

referral of applicants, that is, "the act of bringing to the attention of an employer an applicant or group of applicants who are available for specific job openings," 20 C.F.R. Sec. 651.10 (1985), which is what the employment service system is designed to do and what, in fact, it generally does. The "delegated hiring authority" method, for obvious reasons, requires that the local employment agency be expressly designated as recruiting agent through the use of a special form which was not used in this case. It is clear from these regulations that, absent a special form enabling the local employment agency to recruit, the mere placing of a job offer in the clearance system does not permit the employment agency to recruit workers for a particular job offer without consulting with the employer, giving information about the applicants and obtaining confirmation and acceptance from the employer. *See Western Colorado Fruit Growers Ass'n. v. Marshall*, 473 F.Supp. 693, 696 (D.Colo.1979). Any other interpretation would introduce principles of agency to the clearance system which are not supported by clearly established law. *See P.R. Laws Ann.*, Tit. 31 Sec. 4426 ("agent cannot exceed the scope of his authority") *Lokpez v. Lokpez*, 61 P.R.R. 596 (1943) (agency contracts are to be interpreted restrictively); Tit. 31 Sec. 4461 (the principal is only bound by those obligations which the agent contracted within the scope of his authority); Tit. 31 Sec. 3401 (consent is "shown by the *concurrence* of the offer and acceptance of the thing and cause which are to constitute the contract" (emphasis supplied); *id.* ("acceptance made by letter does not bind the person making the offer, but from the time it came to his knowledge"); *Mutual Rice Co., Inc. v. Heirs of Miguel Truyol*, 52 P.R.R. 7, 9 (1937), Tit. 31 Sec. 3391 (consent is an indispensable requirement for the formation of a contractual relationship); *Maryland Casualty Co. v. Buffalo Life Assurance Co.*, 50 P.R.R. 870, 880 (1937); *see also* Restatement of Agency (Second) sec. 6–8 (1957). Although there may be an implied private right of action for violations

of the Wagner-Peyser Act, *see Gómez,* 417 F.2d 569, plaintiffs' allegations that by their mere acceptance of the job offer or "recruitment" without authority by the Puerto Rico Employment Service, defendants were bound to give them employment are insufficient to sustain a substantial or plausible federal question claim under the Wagner-Peyser legislation. *See Melo-Tone Vending, Inc. v. United States,* 666 F.2d 687, 688–89 (1st Cir.1981).

The allegations of violations to the Civil Rights Act pertain to discriminatory acts and abuses allegedly inflicted upon a group of Puerto Rican migrant workers, who are not parties to this suit, by some individuals and entities who are also non-parties. These allegations deal with those Puerto Rican workers who were in fact hired for the 1978 apple harvest and who did in fact go to the farms in the continental United States and encountered the alleged discrimination. These allegations reflect an entirely different factual and legal scenario, quite distant from that of plaintiffs' who have not alleged sufficient facts to establish a binding legal relationship with defendants under the Act, federal or local law. Absent some specific factual allegations that these defendants committed some discriminatory acts upon the plaintiffs we cannot pin our federal jurisdiction on the coattails of these unrelated acts and on a mere conclusory allegation of discrimination. More so, when plaintiffs admit in their own pleadings that the referral of Puerto Rican migrant workers during the 1978 harvest was discontinued, not by the defendant apple growers, but by the Secretary of Labor. There are no substantial allegations as to any act or omission made by the defendant apple growers with respect to plaintiffs and the specific events asserted to sustain federal jurisdiction on these grounds either. Likewise, the conclusory allegation that these apple growers violated plaintiffs' rights under the Immigration and Nationality Act cannot support federal jurisdiction.

Defendants have made a forceful jurisdictional challenge. Plaintiffs have had more than seven years to establish the substance of their properly challenged jurisdictional pleadings. They have failed to meet their burden of showing adequate jurisdictional facts to give federal substance to their claims against the growers. *See Exchange Nat. Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976). Given the lack of subject matter jurisdiction over plaintiffs' claims against defendant apple growers there is no reason for us to consider the pendent state law claim against these defendants. *Daley v. Town of New Durham,* 733 F.2d 4, 8 (1st Cir.1984). Although we are aware of the remedial nature of the Wagner-Peyser legislation and the many abuses that have been and possibly will be inflicted upon a particularly distressed group of our society, we would be eschewing our responsibilities and imposing a requirement on the clearance system created by the Act if we gave any credence to plaintiffs' unsubstantial claims. Stretching our limited jurisdiction on such frail grounds may work to the detriment of precisely this distressed group who have benefited and will continue to benefit from the system, in view of the likelihood of reduced job offers due to the growers' possible abandonment of a system that would expose them to the onerous effects plaintiffs propose.

The complaint is DISMISSED for lack of subject matter jurisdiction as to all defendant apple growers. All other matters related to these defendants are hereby declared MOOT. No amendment to cure these jurisdictional deficiencies will be allowed in view of the time that has elapsed and the opportunities that have been given to plaintiffs to present a proper set of pleadings.

SO ORDERED.