**Luc CHERY, et al.,
Plaintiffs–Appellants,**

v.

**Gordon BOWMAN, II, d/b/a Mount Clifton Fruit Company,
Defendant–Appellee.**

**No. 89–5281.**

United States Court of Appeals,
Eleventh Circuit.

May 22, 1990.

Gregory S. Schell, Florida Rural Legal Services, Inc., Belle Glade, Fla., for plaintiffs-appellants.

John R. Kelso, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for defendant-appellee.

Before FAY and EDMONDSON, Circuit Judges, HALTOM *, District Judge.

EDMONDSON, Circuit Judge:

Plaintiffs, a group of thirty-four migrant farm workers, appeal two of the district court's decisions. First, they appeal the district court's dismissal of their case for lack of personal jurisdiction over defendant. Because the district court did not hold an evidentiary hearing, we review the court's decision to dismiss de novo and construe all reasonable inferences in favor

---

* Honorable E.B. Haltom, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

of the nonmoving plaintiffs. The burden is on plaintiffs, however, to establish a prima facie case of jurisdiction. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988). Second, plaintiffs appeal the district court's denial of their Motion to Alter or Amend Judgment, made pursuant to Fed.R.Civ.P. 59(e), which we review for abuse of discretion. *American Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir.1985). For the reasons stated below, we affirm.

## FACTS

Defendant Bowman is a resident of Virginia and the managing partner of Mt. Clifton Fruit Company ("Mt. Clifton"), a partnership organized and existing under the laws of Virginia.[1] Mt. Clifton is an apple orchard located entirely within Virginia, and Mt. Clifton's place of business is in Virginia. Neither Mt. Clifton nor Bowman owns real property in Florida or does business in Florida.

In planning for the 1987 harvest, Bowman determined that he needed more apple pickers than he could hire locally and believed that he could fill his employment needs with foreign workers. Under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*, however, he could not lawfully hire foreign farm workers without first receiving certification from the Department of Labor that qualified domestic workers were unavailable and that the employment of the foreign workers would not adversely affect the wages and working conditions of similarly employed U.S. citizens. *See* 8 U.S.C. § 1188(a)(1).

To receive this certification, Bowman was required to recruit domestic workers to fill his needs through the Department of Labor's Interstate Clearance System ("ICS"). *See* 20 C.F.R. § 655.103(d). The ICS, established under authority conferred by the Wagner–Peyser Act of 1933, as amended, 29 U.S.C. §§ 49 *et seq.*, is designed to connect unemployed domestic agricultural workers with jobs. In compli-

ance with ICS requirements and with the help of his in-state recruiting agent, Hart Hudson of the Virginia–Carolina Agricultural Co-operative Association, Bowman filed two requests for workers (called "clearance orders") with the regional Department of Labor office in Philadelphia. These orders sought sixty-two workers and listed the state employment office in Winchester, Virginia as the "local office" serving the area of intended employment. *See* 20 C.F.R. § 655.100(b). The local office is responsible for coordinating the recruitment of workers both within the intended area of employment and in other geographic regions. *See* 20 C.F.R. § 655.101(c)(4). The Winchester office transmitted Bowman's clearance orders to states—including Florida—that the Department of Labor determined were potential sources of farm labor. *See* 20 C.F.R. § 655.105(a). Neither Bowman nor Hudson instructed that the clearance orders be sent to Florida or otherwise determined to which states the clearance orders would be sent; under ICS regulations, this decision is made by the local office. *See id.*

In addition to filing clearance orders, Bowman was required to make some affirmative effort to hire domestic workers. *See* 20 C.F.R. § 655.103(d)(4). The Department of Labor's regional administrator notified Bowman that he should contact six specified farm worker organizations, two of which were located in Florida. The record fails to show, however, that Bowman contacted these groups.

Plaintiff Joseph Fisteac, a Florida resident, drove from Florida to Virginia looking for seasonal work and, while visiting the Winchester employment office, learned of Bowman's needs. From that Virginia office, Fisteac telephoned Bowman's agent Hudson several times to discuss the possibility of employment. Fisteac then met with Bowman in Virginia, and Bowman hired Fisteac as a crewleader with the understanding that Fisteac would bring with him about fifty other workers. Fist-

---

1. Plaintiffs sued Bowman in his individual capacity, even though Bowman contends that plaintiffs were employed by Mt. Clifton.

eac told Bowman that the crew would comprise workers from Maryland and Florida. Neither Bowman nor Mt. Clifton assisted Fisteac's crew in traveling to Virginia, although the clearance orders promised to reimburse travel expenses after the workers had completed one-half of their work obligations.

After Fisteac and his crew had been on the job a few days, Bowman terminated a number of the crew members. Fisteac and some of the crew members filed this diversity action in a federal district court in Florida seeking damages for alleged violations of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801 *et seq.*, and the Wagner–Peyser Act, 29 U.S.C. §§ 49 *et seq.;* plaintiffs also alleged pendent state law claims for breach of contract. The district court dismissed plaintiffs' claims for lack of personal jurisdiction over Bowman.

## DISCUSSION

### A. *Dismissal for Lack of Jurisdiction*

The Migrant and Seasonal Agricultural Worker Protection Act permits a private right of action for persons aggrieved by an agricultural employer and allows such persons to file suit in any federal district court having jurisdiction over the parties. *See* 29 U.S.C. § 1854(a). For a district court in Florida to exercise personal jurisdiction over Bowman, sufficient "minimum con-

tacts" with Florida must be present to satisfy due process requirements. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).[2]

Under traditional notions of federalism, a defendant has a right pursuant to the due process clause to be free from the burden of suit in an inconvenient forum unless he has sought and accepted the benefits of that forum state. In determining whether the Florida court's exercise of jurisdiction over Bowman would violate the Constitution, we must decide whether Bowman purposefully established minimum contacts with Florida and, if he did, whether jurisdiction in the Florida court would offend the "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Morris,* 843 F.2d at 492. We are concerned here only with specific personal jurisdiction, which "derives from a party's contacts with the forum that are related to the cause of action."[3] *Williams Elec. Co.,* 854 F.2d at 392.

The Supreme Court has said that a defendant purposefully avails himself of the benefits of the laws of a state when the defendant's contacts with the state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger*

2. Because the federal statutes under which plaintiffs seek relief contain no provisions for nationwide service of process, Bowman's contacts, even if adequate for due process purposes, must also satisfy the requirements of the Florida long-arm statute. *See Williams Elec. Co., Inc. v. Honeywell, Inc.,* 854 F.2d 389, 391 (11th Cir.1988). While our practice is to decide questions of federal constitutional law as a last resort, we have decided this case on constitutional grounds instead of state law grounds. The parties briefed the case chiefly in federal constitutional terms. And, in the absence of a recent decision from Florida's highest court, we are not confident that we understand how Florida's long-arm statute differs—if it differs—from the due process standards required by the Constitution. *See April Indus., Inc. v. Levy,* 411 So.2d 303, 304–05 n. 2 (Fla.Dist.Ct.App.1982) (although courts have stated that Florida long-arm statute requires more contacts with Florida than federal due process considerations, *e.g., Bloom*

*v. A.H. Pond Co., Inc.,* 519 F.Supp. 1162 (S.D.Fla. 1981), United States Supreme Court decisions and lower court interpretations of Florida law have brought Florida and federal practice closer in line); *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Sup.Ct.Fla.1989) ("The mere proof of any one of the several circumstances enumerated in section 48.193 [the Florida long-arm statute] as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts.").

3. The second type of personal jurisdiction, general jurisdiction, derives from the defendant's contacts with the forum state that are unrelated to the litigation. Such contacts must be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Neither Bowman nor Mt. Clifton has contacts with Florida unrelated to this litigation.

*King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or person.'" *Id.* at 475, 105 S.Ct. at 2183 (citations omitted). Although jurisdiction cannot be avoided merely because the defendant did not physically enter the forum state, *id.* at 476, 105 S.Ct. at 2184, it is essential "'that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* at 474, 105 S.Ct. at 2183 (citing *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ Applying these principles, we believe that the exercise of personal jurisdiction over Bowman by a district court in Florida would violate the requirements of due process. It appears from the record that Bowman had no contact with the state of Florida, unless we count the Department of Labor's forwarding of clearance orders to the Florida employment office. Contrary to plaintiffs' assertion, the Department of Labor's action does not constitute purposeful availment of the benefits of Florida law by Bowman. Although Bowman learned that the Virginia local office had sent his clearance orders to Florida, he never requested this action. Nor, as plaintiffs concede, was the Department of Labor acting as Bowman's agent. Moreover, any contact created by clearance orders was fortuitous, particularly since Bowman hired

none of the plaintiffs as a result of the clearance orders being sent to Florida.

Plaintiffs did not learn of Bowman's clearance orders at a Florida employment office or through any efforts of the Department of Labor in Florida. Fisteac learned of Bowman's employment needs while at the Winchester, Virginia employment office; he initiated contact with Hudson from that office and eventually was hired by Bowman in Virginia. Fisteac then relayed the employment information to his crew members. These circumstances were unaffected by the Virginia office's having sent Bowman's clearance orders to Florida.[4]

Plaintiffs contend that *Rios v. Altamont Farms, Inc.,* 64 N.Y.2d 792, 476 N.E.2d 312, 486 N.Y.S.2d 913 (1985), *rev'g and adopting dissenting opinion at* 100 A.D.2d 405, 475 N.Y.S.2d 520 (N.Y.App. Div.1984), supports their argument. In that case, a New York state court granted full faith and credit to default judgments entered against New York agricultural employers by a Puerto Rican court, where the New York defendants had allowed their clearance orders to be sent into Puerto Rico through the ICS.

Apart from differences that might exist between the "full faith and credit" analysis in the context of enforcing judgments already entered and "a minimum contacts" analysis in the context of a dismissal for lack of personal jurisdiction, we are not persuaded by the New York appellate court's reasoning. Even if we were to agree that an agricultural employer who uses the ICS "deliberately set[s] in motion the job recruitment machinery of the interstate clearance system," *Rios,* 475 N.Y. S.2d at 526, we stress that the Department

---

**4.** Under plaintiffs's line of reasoning, for Bowman to avoid being sued in every state to which the government employment office sent his clearance orders, Bowman would have had to cancel the clearance orders and thus his participation in the ICS as well. This would not only place agricultural employers in a frustrating situation—if they do not participate in the ICS and hire available domestic workers, they cannot receive certification to hire foreign workers—but also hinder the purposes of the ICS. *See Alfred L. Snapp & Co., Inc. v. Puerto Rico,* 458 U.S. 592, 596, 102 S.Ct. 3260, 3263, 73 L.Ed.2d

995 (1982) (One "obvious point of this somewhat complicated statutory and regulatory framework is to provide ... assurances to United States workers.... [T]hese workers are given a preference over foreign workers for jobs that become available in this country.); *Elton Orchards, Inc. v. Brennan,* 508 F.2d 493, 495 (1st Cir.1974) ("The ICS is one element of a complex statutory structure designed to facilitate the use of foreign nationals temporarily admitted to the United States to work for a specific employer if domestic workers are unavailable.").

of Labor's act of sending the clearance orders into a state does not constitute contact with that state by the agricultural employer. The United States government acts independently in deciding where to send the orders. And even if transmittal of the clearance orders were a contact with Florida on the part of an employer, this single contact is too attenuated in this case to support personal jurisdiction. In *Rios,* unlike this case, the defendant apple growers received substantial benefits from the forum state's (Puerto Rico's) labor department in recruiting and processing the laborers who ultimately became the plaintiffs.

Plaintiffs cite several other cases in which lower courts have upheld the exercise of personal jurisdiction over out-of-state defendant agricultural employers participating in the ICS. In each of these cases, however, the defendant had some contact with the forum state in addition to the circulation of clearance orders. *See Neizil v. Williams,* 543 F.Supp. 899 (M.D. Fla.1982) (defendant named a Florida labor contractor in its clearance order and specified that this person conduct recruiting and hiring on defendant's behalf); *Garcia v. Vasquez,* 524 F.Supp. 40, 42 (S.D.Tex.1981) (defendant communicated directly with crew members in forum state and assisted workers with transportation to defendant's home state); *Chism v. Anderson,* No. 82–440 (M.D.Fla. Feb. 22, 1983) (defendant specified a certain Florida farm labor contractor to recruit and hire workers on defendant's behalf).[5]

Plaintiffs contend that Bowman established other contacts, specifically that Bowman formed employment contracts in Florida with plaintiffs and that Bowman contacted Florida farm worker organizations as part of the ICS requirements. We need not decide whether such contacts, if established, would subject Bowman to the exercise of personal jurisdiction by a court in Florida, because we conclude that Bowman did not make these contacts.

First, without deciding whether the clearance orders were contractual offers of employment, we conclude that, even if they were, Fisteac and his crew did not accept these offers in Florida. The offers were accepted in Virginia, either when Fisteac agreed that he and his crew would work for Bowman or when Fisteac and his crew reported for work. *See Western Colorado Fruit Growers Ass'n, Inc. v. Marshall,* 473 F.Supp. 693, 696 (D.Colo.1979) (clearance order was offer of employment that could be accepted only by individual worker reporting to job site). Second, we note that, although Bowman was instructed to contact two farm worker organizations in Florida, there is no evidence in the record that he made this contact.

Because we conclude that Bowman had no contacts with the state of Florida, it follows that the exercise of personal jurisdiction over Bowman by a court in Florida would offend traditional notions of fairness.

B. *Denial of Motion to Alter or Amend Judgment*

■ After the district court dismissed the case for lack of jurisdiction, plaintiffs filed a Rule 59(e) motion asking the court to alter or amend its judgment. With this motion, plaintiffs offered as additional evidence Joseph Fisteac's affidavit, which plaintiffs contend shows that Bowman established sufficient contacts in Florida to make jurisdiction over Bowman in that state's forum constitutional. In denying plaintiffs' motion, the district court did not say whether it considered Fisteac's affidavit. We question the propriety of considering the affidavit because plaintiffs filed it so late in the case,[6] but we will assume that

---

5. Plaintiffs also cite *Acker v. Hepburn Orchards, Inc.,* No. 82–715 (M.D.Fla. Nov. 29, 1982). In that opinion, however, the district court merely deferred final ruling on the defendant's motion for a Rule 12(b)(2) dismissal, saying that "[c]onceivably, after all the evidence concerning the nature and extent of Defendant's contact with

this forum is presented, Plaintiffs will not have sustained their ultimate burden of demonstrating that jurisdiction over this Defendant is proper." Slip op. at 3.

6. When supplementing a Rule 59(e) motion with additional evidence, the movant must show either that the evidence is newly discovered or,

the district court considered the affidavit: plaintiffs' counsel said at oral argument that he did not submit the affidavit earlier because Fisteac was out of the country, and Bowman never objected to the affidavit on the ground of untimeliness.

Based on the affidavit, plaintiffs argue that Fisteac was Bowman's agent and that Fisteac recruited workers in Florida on Bowman's behalf. We disagree. Fisteac says in his affidavit only that Bowman hired him as a "crewleader" and that Bowman knew Fisteac's crew members would come from Maryland and Florida. This does not show that Bowman hired Fisteac to act as his agent, and Fisteac does not detail any terms of an agency relationship. Based on the record, the more likely inference is that Fisteac was an agent for the workers: plaintiffs, in their brief, state that Fisteac "discovered Bowman's clearance order while searching in the Winchester, Virginia area for work *for his [Fisteac's] crew.*" (emphasis added).

The district judge did not have Fisteac's affidavit before him when he ruled that the case must be dismissed for lack of jurisdiction. Plaintiffs provided the judge with this affidavit later, when asking the judge to change his original ruling. The affidavit was not powerful, particularly at the later stage of litigation; and we cannot say that the district court abused its discretion in denying plaintiffs' motion.

AFFIRMED.

if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence. *See Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir.1987); *American Home Assurance Co.,* 763 F.2d at 1239.