Venancio **TORRES–VALLEJO, individually and on behalf of all persons similarly situated, Plaintiff,**

v.

**CREATIVEXTERIORS, INC., and Jeffrey Miller, Defendants.**

Civil Action No. 15–cv–2832–WJM–CBS

United States District Court,
D. Colorado.

Signed 11/23/2016

Andrew Hess Turner, Buescher, Kelman, Perera & Turner, P.C., Chris G.

Hoffman, Hoffman Sheffield Sauseda and Hoffman, PLLC, Denver, CO, Edward John Tuddenham, Edward Tuddenham Law Office, New York, NY, Gregory Scott Schell, Florida Legal Services, Inc., Lake Worth, FL, for Plaintiff.

Christopher J. W. Forrest, Hamilton Faatz, PC, Greenwood Village, CO, Gregory Alan Eurich, Holland & Hart, LLP–Denver, Denver, CO, Mollie B. Hawes Miller & Steiert, P.C., Littleton, CO, for Defendant.

### ORDER GRANTING MOTION FOR ISSUANCE OF FLSA NOTICE AND FOR CLASS CERTIFICATION

William J. Martínez, United States District Judge

In this action, Plaintiff Venancio Torres-Vallejo brings claims against Defendants CreativExteriors, Inc., ("CE") and its president, Jeffrey Miller (together, "Defendants"), on behalf of himself and a proposed class of similarly-situated landscape laborers who worked for Defendants under terms of the H–2B visa program of the Immigration and Nationality Act, between 2010 and 2015. Plaintiff alleges he was paid less than required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the Colorado Minimum Wage Act, Colorado Revised Statutes §§ 8–6–101 *et seq.*, and that Defendants also breached a contractual obligation to pay Plaintiff and other putative class members the prevailing wage certified by the United States Department of Labor ("DOL") as part of the approval process for their H–2B visas. (*See generally* ECF No. 1.) Now before the Court is Plaintiff's Motion for Issuance of FLSA Notice and for Class Certification. (ECF No. 33.) For the reasons stated below, the motion is granted in part, with certain modifications to Plaintiff's proposed class and subclass definitions.

### I. BACKGROUND

Unless noted otherwise, the following facts are drawn from Plaintiff's complaint and from his affidavit and other supporting evidence filed in support of his Motion for Class Certification.

Defendant CE is a landscaping services firm that hired both U.S. and foreign landscape laborers to work seasonally in Colorado in each year from 2010 through 2015. (ECF No. 1 ¶¶ 6, 16–19.) Plaintiff is a Mexican national who worked for CE each year from 2012 through 2015. (*Id.* ¶¶ 5, ECF No. 34 at 2; ECF No. 33–2 ¶ 2.) In 2010, Defendant hired approximately 30 U.S. and foreign landscape laborers; that number increased to approximately 60 workers in 2015. (ECF No. 33–4 at 5–6.)[1]

Each year in question, CE petitioned for H–2B temporary work visas from the U.S. Department of Homeland Security so it could hire Mexican workers as landscape laborers. (ECF No. 1 ¶¶ 16, 19–20.) To obtain these visas, CE first had to seek and receive certification from DOL, by submitting the application to hire workers under the H–2B program to fill the job of "landscape laborer." (*See id.* ¶¶ 17, 20; ECF No. 34 at 2–3.)

As part of the H–2B visa application process, CE, like other employers, was required to request and receive a determination of the "prevailing wage" for the relevant work and locality from DOL (specifically, from the National Prevailing Wage Center). (*See* ECF No. 1 ¶ 20; *see generally* 20 C.F.R. § 655.10.) After receiving the prevailing wage determination,

---

1. Page numbers in all docket citations are to the page number in the ECF header, which does not always match internal pagination, particularly in evidentiary materials such as transcript excerpts, or materials that include prefatory pages such as a table of contents.

CE was required to follow efforts specified by regulation to recruit U.S. workers to fill its positions, offering no less than the prevailing wage. (*See* ECF No. 1 ¶¶ 20–21; ECF No. 48 at 3–4; *see generally* 20 C.F.R. § 655.18; 20 C.F.R. § 655.17 (2008)[2].) If and when those efforts failed to fill all the positions, in each year DOL certified that sufficient U.S. workers were not available and CE could then proceed to petition for the H–2B visas and hire the Mexican workers who received those visas. (ECF No. 1 ¶¶ 21–23; ECF No. 48 at 3–4; *see generally* 20 C.F.R. §§ 655.1(a), 655.15, 655.16.) CE's applications to DOL certified that the recipients of the H–2B visas would be paid no less than the prevailing wage.

For each year, DOL approved CE's applications for H–2B visa workers under terms set forth in CE's applications and DOL's certifications. (*See generally* ECF Nos. 33–5, 33–6, 33–7, 33–8, 33–9.) For example, for 2010, DOL approved CE's application to hire up to 50 total workers for the position of landscape laborer with a "basic rate of pay offered" of $8.92 per hour ($13.38 per hour f or overtime). (ECF No. 33–5 at 3–8.) The application submitted by CE to DOL includes a declaration certifying that "[t]he offered wage equals or exceeds the highest of the prevailing wage, the applicable Federal, State, or local minimum wage, and the employer will pay the offered wage during the entire period of the approved labor certification." (*Id.* at 9, ¶ B.5.)[3]

Before one of CE's recruited foreign workers could receive one of the H–2B visas, a visa application fee had to be paid. (*See* ECF No. 1 ¶¶ 28–29; ECF No. 33–4 at 34.) Plaintiff and the other Mexican workers also had to appear for a visa interview at the U.S. consulate in Monterrey, Mexico. (ECF No. 33–2 ¶ 2; ECF No. 33–4 at 33.) For Plaintiff, this required traveling from his home in the state of Morelos to Monterrey and staying there for two or three nights. (ECF No. 33–2 ¶¶ 1–2.) Once the visas were issued, the Mexican workers traveled to Colorado, then returned from Colorado at the end of each season.

Plaintiff alleges that he and other workers were paid less than the wages to which they were legally entitled in several ways.

First, Plaintiff alleges that a number of unreimbursed expenses paid by himself and other workers constituted *de facto* pay deductions which reduced their wages below the hourly rates required by the state and federal minimum wage and by contract. Plaintiff alleges that he and other workers had to pay for transportation, lodging and other costs for the travel from their homes to the U.S. consulate in Monterrey, and for the travel between Mexico and Colorado at the beginning and end of each year's work season. Plaintiff also alleges that he and other workers had to pay the visa application fee in 2010 through 2013, and that in 2014 and 2015, Defendant

---

**2.** In this Order, the Court generally cites to the current version of the C.F.R. for simplicity's sake, but sometimes cites to prior versions of the regulations that were in effect during some or all of the relevant years, particularly where those provisions have since been renumbered. Subsequent amendments to the regulations do not change the overall operation of the H–2B program or make changes that alter the Court's analysis here.

**3.** In this Order, the Court only very generally summarizes the operation of the H–2B visa program. Plaintiff's reply brief offers a more detailed description of the relevant procedures and regulations (ECF No. 42 at 2–4), as do prior court decisions addressing similar claims. *See, e.g., Cuellar–Aguilar v. Deggeller Attractions, Inc.,* 812 F.3d 614, 617 (8th Cir. 2015); *Bojorquez–Moreno v. Shores & Ruark Seafood Co.,* 92 F.Supp.3d 459, 461, 466–67 (E.D. Va. 2015).

paid the visa application fee up front, but then required workers to reimburse some or all of that fee. Plaintiff also alleges that Defendants did not reimburse the workers for the costs of washing the uniforms they were required to wear. (*See* ECF No. 34 at 2.)

Second, Plaintiff alleges that he and the other landscape laborers were required to start each work day at the CE yard, loading equipment onto trucks, and that at the end of each day they were required to return to the yard to unload the equipment. Plaintiff alleges he and other workers were not compensated for the time spent loading, unloading, and traveling between the yard and the first and last job site for each day. Rather, Plaintiff alleges that Defendants only "started the clock" when the workers arrived at the first job site each day, and "stopped the clock" at the end of work at the last job site, before the workers returned to the yard and spent time unloading. (*Id.*)

Third, Plaintiff alleges that he and certain other workers hired as landscape laborers were assigned other duties outside the scope of the landscape laborer role—specifically, driving trucks and acting as supervisors or crew leaders. Plaintiff claims these additional tasks required payment of a higher prevailing wage. (*Id.*)

Finally, as of July 10, 2013, DOL reached a determination of a higher prevailing wage rate for the landscape laborers working for CE. Plaintiff alleges that Defendants did not promptly comply with DOL's notice announcing this increased wage as of July 10, 2013, but waited over a month before raising the workers' pay. (*Id.*)

Plaintiff filed this class action lawsuit on December 30, 2015. Plaintiff's complaint includes four claims for relief: (1) for FLSA violations, specifically, failure to pay minimum wage for hours worked up to 40 in a week, overtime for hours over 40 in a week, and the workers' "regular rate" for hours up to 40 in weeks they worked overtime (ECF No. 1 ¶¶ 40–41); (2) for similar violations of the Colorado Minimum Wage statute (*id.* ¶ 42); (3) for breach of contract, specifically, failure to pay the DOL-approved prevailing wage for all hours of work and all kinds of work performed, which Plaintiff alleges Defendants had a contractual obligation to pay (*id.* ¶¶ 43–44); and (4) a claim of *quantum meruit* for the prevailing wage applicable to tasks performed beyond the scope of the landscape laborer job description certified by DOL, to the extent there was not a contractual duty to pay additional wages for those tasks (*id.* ¶ 45).

Plaintiff filed his Motion for Issuance of FLSA Notice and For Class Certification (ECF No. 33), along with a Motion for Approval of Class Notice, Distribution Method and Tolling of Limitations (ECF No. 35) on June 3, 2016. Defendants filed a single brief on July 8, 2016 (ECF No. 39) opposing Plaintiff's Motion for Class Certification and Motion regarding class notice procedures, and also advancing legal arguments that underlie Defendants' own two-page Motion for Partial Summary Judgment as to certain claims (ECF No. 40), filed the same day. The parties' briefing as to Plaintiff's request for class certification and Defendants' request for summary judgment is therefore oddly intertwined (*see* ECF Nos. 39, 42–44), but all three pending motions are now fully briefed and ripe for decision. This order addresses only Plaintiff's Motion for Class Certification. (ECF No. 33.) The Court will address the other pending motions in separate orders.

## II. LEGAL STANDARD

As the party seeking to certify a class, Plaintiff bears the strict burden of

proving the requirements of Rule 23. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). In determining the propriety of a class action, the question is not whether a plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982). When deciding whether the proposed class meets the requirements of Rule 23, the Court accepts the plaintiff's substantive allegations as true, though it need not blindly rely on conclusory allegations and may consider the legal and factual issues which the complaint presents. *Shook*, 386 F.3d at 968; *see also Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009). T he Court should not pass judgment on the merits of the case, but must conduct a "rigorous analysis" to ensure that the requirements of Rule 23 are met. *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

To justify class certification, Plaintiff must first demonstrate that all four prerequisites of Federal Rule of Civil Procedure 23(a) are clearly met. *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013). These threshold elements consist of the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If Plaintiff establishes that he has met these threshold requirements, he must then demonstrate that the action falls within one of the three categories set forth in Rule 23(b). *Shook*, 386 F.3d at 971. Here, Plaintiff seeks certification pursuant to Rule 23(b)(3). (*See* ECF No. 34 at 11–15.)

█ The decision whether to grant or deny class certification "involves intensely practical considerations and therefore belongs within the discretion of the trial court." *Tabor*, 703 F.3d at 1227.

## III. PROPOSED CLASS

Plaintiff proposes the following class definitions:

(1) As to Plaintiff's breach of contract claim, a class defined as:

> All U.S. and foreign workers hired by Defendant to fill jobs described in Defendant's 2010, 2011, 2012, 2013, 2014, and 2015 labor certification applications.

(2) As to Plaintiff's FLSA and Colorado Minimum Wage Act claims, a subclass limited as to the years 2013–15, specifically:

> All U.S. and foreign workers hired by Defendant to fill jobs described in Defendant's 2013, 2014, and 2015 labor certification applications.

(ECF No. 33 at 1–2; *see also* ECF No. 1 ¶¶ 8–10.)[4]

---

4. Subject to the exclusion of U.S. workers as set out below, the Court will grant Plaintiff's request for certification of a subclass as to his FLSA and Colorado Minimum Wage Act claims. *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses"); *see also* Fed. R. Civ. P. 23(d)(1)(A) (Court may "issue orders that determine the course of proceedings or prescribe measures

to prevent undue repetition or complication in presenting evidence or argument.")

The Court views this subclass as what other courts and commentators have labeled a "management subclass," which is "created solely to expedite resolution of the case by segregating a distinct legal issue that is common to some members of the existing class." William B. Rubenstein, *Newberg on Class Ac-*

## IV. CLASS CERTIFICATION ANALYSIS

### A. Rule 23(a)

The Court's first task is to ensure that the Federal Rule of Civil Procedure 23(a) requirements are satisfied as to the proposed class: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). The Court will address each of these considerations in turn.

#### 1. Numerosity

■ Plaintiff claims that the evidence shows at least 140 individuals worked for Defendants as landscape laborers between 2010 and 2015. (ECF No. 34 at 9.) Defendants do not dispute this allegation or oppose Plaintiff's motion on this issue. Accordingly, the Court treats numerosity as conceded and concludes that Plaintiff's allegation of approximately 140 class members satisfies the numerosity requirement.

#### 2. Commonality

The distinction between the commonality requirement in Rule 23(a)(2) and the requirement in Rule 23(b)(3) that common issues predominate over individual ones has become somewhat hazy since the Supreme Court announced that the search for common questions under Rule 23(a)(2) really means the search for questions that can generate classwide answers. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338,

350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). For example, it may be a common question whether a class of employees worked overtime, but if that question cannot be answered on a classwide basis, the Supreme Court seems to be saying that the individualized nature of the inquiry destroys the commonality of the question—which begins to sound very similar to a conclusion under Rule 23(b)(3) that individual issues predominate over common questions.

In any event, resolving this tension is probably unnecessary because "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Thus, "courts will often treat the application of Rules 23(a)(2) and 23(b)(3) together." *Newberg* § 3:27.

Here, the Court will likewise treat these analyses as overlapping. As to Rule 23(a)(2) there are certainly common questions of law and fact—including whether CE's employees were, in fact, required to pay for their own visa application fees and transportation expenses, whether any such *de facto* wage deductions reduced their pay below the state or federal minimum wage or led to unpaid overtime, whether the workers were required to work loading, unloading, and traveling to and from job sites without compensation, and whether

*tions* § 7:32 (5th ed., Sept. 2016 update) (alterations incorporated; internal quotation marks omitted) (*"Newberg"*).

Defendants had a contractual obligation to pay the landscape laborers the DOL-determined prevailing wage, before and/or after DOL raised the rate in July 2013.

Defendants' counterarguments are really disagreements with Plaintiff's factual allegations. Defendants assert that they *did* pay the workers' visa fees in 2013, and that they only refused to reimburse workers expenses if and when they did not submit receipts. (ECF No. 39 at 13.) Defendants also contend that Plaintiff "was in a distinct minority" of workers who engaged in loading and unloading trucks, and that Plaintiff was "the only H–2B worker who drove the Ryder truck," referring to a truck that delivered flowers and other plants and landscaping supplies to job sites, as distinct from the trucks that transported crews and other equipment. (*Id.*)

These arguments contest the merits or veracity of Plaintiff's claims. However, Plaintiff has submitted contrary evidence, including his affidavit statements that "[a]ll the crew members would assist in loading the trucks" each morning (ECF No. 33-2 ¶ 11) and also "always unloaded the trucks . . . at the end of the work day," after being "clocked out" by a supervisor (*id.* ¶ 12). Plaintiff's evidence also alleges that a CE manager told Plaintiff and other workers that CE would not pay reimbursement for travel expenses, that Plaintiff paid his own visa application fees in 2012 and 2013, and that in 2014 and 2015, Defendants advanced the visa application fee but required the workers to repay it. (*Id.* ¶¶ 5–8.) These are factual disputes. The Court does not pass on the merits of the case or resolve contested factual disputes in ruling a motion for class certification, but "accept[s] the substantive allegations of the complaint as true." *Shook*, 386 F.3d at 971.

If anything, the existence of these disputes relevant to the proposed class as a whole tends to show there are common issues of fact for resolution. To the extent Defendants's factual arguments relate to class certification, they bear more on typicality, addressed below, rather than on commonality. Beyond that, the Court addresses further in Part IV.B. whether common issues predominate over individual ones as required by Rule 23(b)(3).

### 3. Typicality

■ Defendants argue that Plaintiff and his claims are not typical of other class members. First, Plaintiff worked for CE from 2012–15 but seeks to represent a class also including those who worked for CE in 2010 and 2011. (*See* ECF No. 39 at 3.) Defendants also claim that Plaintiff's "driving duties were unique to him," as the only worker to drive the Ryder truck, and that he was never a crew leader. Since he seeks to represent class claims for crew leaders and workers who drove other kinds of trucks, Defendants argue Plaintiff is not a typical class representative. (ECF No. 39 at 3, 13.)

■ "The positions of the class representatives need not be identical to those of the other class members, so long as there is a sufficient nexus between the claims of the class representatives and the common questions of law or fact which unite the class." *Decoteau v. Raemisch*, 304 F.R.D. 683, 689 (D. Colo. 2014). The relevant inquiry is "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Applying these principles, the Court concludes

that Plaintiff's individual claims are sufficiently interrelated with the claims he asserts on behalf of the putative class that absent class members, including those who worked for CE as landscape laborers in 2010 and 2011, will be fairly and adequately represented.

As to the years worked, Defendants cite no evidence suggesting the employment practices giving rise to Plaintiff's claims were materially different in 2010 and 2011 than in later years, or that workers in 2010 and 2011 do not have the same interrelated claims. Defendants also cite no authority suggesting that the fact Plaintiff worked seasonally during some but not all of the relevant years by itself defeats class certification on the grounds of typicality. If later factual development reveals differences related to the earlier years, the class definition can be modified at that time.[5]

As to Defendants' other factual points, they relate only to Plaintiff's claim that he and certain other workers were assigned tasks beyond the scope of the landscape laborer job description (i.e., driving and supervisory duties) and so should have been paid higher rates. (See, e.g., ECF No. 1 ¶¶ 37–38, 45.) The majority of Plaintiff's claims appear to be common to all the landscape laborers he seeks to represent as class representative, including the claims regarding de facto pay deductions, effective underpayment of the minimum wage, non-payment for loading/unloading time, and effective payment of less than the DOL-approved prevailing wage rate.

In sum, Defendants' typicality arguments do not defeat Plaintiff's request for class certification.

#### 4. Adequacy

Defendants make no argument regarding adequacy of Plaintiff to serve as class representative and the Court views the issue as also having been conceded. From the arguments in Plaintiff's motion and supporting submissions, including the affidavit of Plaintiff's attorney, Edward Tuddenham (ECF No. 34 at 11; ECF No. 33–1), the Court is satisfied that no conflicts of interest are shown between Plaintiff and other class members and that Plaintiff's lawyers are able to vigorously and competently prosecute this case on behalf of the class. See Decoteau, 304 F.R.D. at 689 (adequacy analysis entails resolution of (1) whether named plaintiff and his counsel have any conflicts of interest with other class members and (2) whether named plaintiff and his counsel will prosecute the action vigorously on behalf of the class). Accordingly, the Court finds that Plaintiff will be an adequate class representative.

### B. Rule 23(b)(3)

Plaintiff must also establish that his proposed class action can be maintained under Rule 23(b). Plaintiff argues for certification only under Rule 23(b)(3). (ECF No. 37 at 7.) Rule 23(b)(3) permits class certification where "questions of law or fact common to class members predominate over any ques-

---

**5.** The Court retains "plenary power to modify the class definition, or rescind the class altogether, at any time prior to judgment," and "the parties are free to move for modifications to the class definition should subsequent events reveal that the definition is unworkable." Ditty v. Check Rite, Ltd., 182 F.R.D. 639, 645 (D. Utah 1998); Fed. R. Civ. P. 23(c)(1)(C) (order granting certification may be altered or amended before final judgment); see generally Newberg § 7:37 ("Courts are granted enormous discretion" in altering or amending certification decisions). While granting class certification on the present showing, the Court recognizes that factual development later in litigation may warrant alteration of the class definition, e.g., if it turns out CE's employment practices differed in certain years, or to treat the claims regarding tasks beyond the "landscape laborer" job description separately, if discovery reveals those claims do not warrant class treatment.

tions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

■ Defendants argue that individual issues predominate because, as to the claimed *de facto* wage deductions, each class member will need to show receipts or other proof that they paid visa application fees and for transportation and other costs. Defendants also argue that each class member would need to demonstrate the days on which they performed any uncompensated work, and the time spent on any tasks outside the landscape laborer job description.

Despite Defendants' contention that such individualized evidence will be required from each landscape laborer, the Court is not persuaded at this early stage of the litigation that it will impossible to prove liability or damages on a class-wide basis. For example, it appears possible, if not likely, that the evidence will show Defendants either did or did not pay for the visa application fees for all workers in any given year. And, the amount of the application fee is the same for all workers. Likewise, if Plaintiff proves the workers should have been reimbursed reasonable costs for transportation between Mexico and Colorado, the amount of such costs may be provable on a classwide basis, by reference to published bus fares, typical and reasonable hotel and meal costs, etc., without need for individualized evidence. Likewise, class-wide evidence may establish whether or not there was a policy of requiring landscape laborers to work loading, unloading, and traveling to and from the CE work yard without compensation. Class-wide evidence such as Defendants' records of the days and hours worked by class members may well provide evidence of days worked, distance of any uncompen-

sated travel time, or other common factual matters.

In any event, the individualized factual issues raised by Defendants bear primarily on the issue of the damages that may be due to individual class claimants, *if* liability is proved. The Tenth Circuit has observed, however, that "individualized damages issues" do not defeat class certification and "[c]lass-wide proof is not required for all issues ... Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized questions." *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014); *see also De Leon–Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1221 (11th Cir. 2007) (class certification appropriate despite "highly individualized assessment of the facts" needed to determine number of hours employees worked underlying each individual's claim for actual damages). Thus while these factual and evidentiary issues may require careful evidentiary submissions from Plaintiff and his proposed class in the future, the Court concludes that as to the Mexican workers hired under the H–2B visa program, common questions of law and fact predominate over questions affecting only individual class members. Fed. R. Civ. P. 23(b)(3). As further addressed below in Section IV.D.3., the Court reaches a different conclusion as to U.S. workers who Plaintiff also proposes to include in the same class.

■ The Court also concludes that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. *Id.* No other litigation concerning these issues has been filed against Defendants. Fed. R. Civ. P. 23(b)(3)(B). The Court also finds that the facts of this case are such that individual class members would have little interest in individually controlling litigation or prosecuting separate actions, and that it is de-

sirable to consolidate the litigation of the claims into one action. *See* Fed. R. Civ. P. 23(b)(3)(A)&(C). The class members are Mexican nationals with limited access to U.S. courts, and the value of any individual's claims is likely too small to make individual litigation cost effective. These factors suggest that individualized resolution of claims would be both unlikely and impractical. Defendants do not contest these arguments and also have not identified any specific difficulties in managing this case as a class action. *See* Rule 23(b)(3)(D). The Court therefore concludes that Plaintiff has shown class certification pursuant to Rule 23(b)(3) is warranted as to the Mexican H–2B workers.

## C. Statute of Limitations

Defendants argue that Plaintiff's breach of contract claim is subject to a three year statute of limitations, and that any class certification should therefore exclude claims that accrued more than three years before this case was filed. (*See* ECF No. 39 at 7–9.)[6]

In Colorado, "[i]n general, contract actions are subject to a three-year statute of limitations. If a contract is for a 'liquidated debt' or for an 'unliquidated, determinable amount,' however, it falls under the six-year statute of limitations provided by section 13–80–103.5(1)(a)." *Portercare Adventist Health Sys. v. Lego*, 286 P.3d 525, 528 (Colo. 2012); *compare* Colo. Rev. Stat. § 13–80–101(1)(a) ("[a]ll contract actions" subject to three-year statute of limitations "except as otherwise provided in section 13–80–103.5") *with* Colo. Rev. Stat. § 13–80–103.5(1)(a) (applying six-year statute of limitations to "[a]ll actions to recover a liquidated debt or an unliquidated, deter-

minable amount of money due"). Here, the parties dispute whether Plaintiff's claims constitute an action for "an unliquidated, determinable amount of money," and are therefore subject to the six-year statute of limitations found in § 13–80–103.5(1)(a).

 Under relevant case law, "an amount is either liquidated or determinable for purposes of § 13–80–103.5(1)(a) if an agreement sets forth a method for determining the amount due, regardless of the need to refer to facts external to the agreement." *Interbank Investments, L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. 2000); *Portercare*, 286 P.3d at 528 ("a 'liquidated debt' may be ascertained either by reference to the agreement, or by simple computation using extrinsic evidence if necessary").

In *Rotenberg v. Richards*, 899 P.2d 365, 367 (Colo. App. 1995), the court cited the Restatement (Second) of Contracts § 354 to apply this provision "where the contract fixes a price per unit of performance, even though the number of units performed must be proved and is subject to dispute." *Id.* at 368. Applying that principle, *Rotenberg* held that a claim brought under an attorney's retainer agreement for payment on a per-hour basis was "determinable," even though the defendant "contest[ed] the number of hours" worked, because the amount due could still be readily calculated upon resolution of that dispute. *Id.*

Subsequent cases have likewise applied § 13–80–103.5(1)(a) to claims for employee compensation due based on the number of hours worked, concluding that such claims are for "determinable amounts" ascertainable by "simple computation" as set forth by the contract—namely, the number of

---

6. Plaintiff seems to implicitly recognize that the applicable statute of limitations will limit the scope of his proposed class definition, as the subclass he proposes for the FLSA and Colorado Minimum Wage claims excludes earlier years that would be beyond the relevant statutes of limitations.

hours worked multiplied by the hourly rate of pay. *See Interbank*, 12 P.3d at 1230 ("a claim under an employment contract [is] held to be 'determinable' where, despite a dispute over the number of hours worked by an individual, the amount due [is] easily calculable"; applying holding of *Fishburn v. City of Colo. Springs*, 919 P.2d 847 (Colo. App.1995)); *Giuffre v. Marys Lake Lodge*, LLC, 2013 WL 673987, at *5 (D. Colo. Feb. 25, 2013) (employee's contract claim for overtime subject to six-year statute of limitations because "if overtime wages are owed, they must be calculated according to the wage-and-a-half method," therefore finding the case "akin to *Porter-care* insofar as the alleged debt may be calculated 'by simple computation using extrinsic evidence' ").

■■■ The same result applies here. Plaintiff's FLSA, Colorado Minimum Wage, and breach of contract claims are based on entitlement to an hourly wage and are therefore claims for amounts that are "easily calculable," even if extrinsic evidence is needed to prove up the number of hours worked, the wages already paid, and therefore the amounts claimed due.

As to the *de facto* deductions that Plaintiff claims reduced his effective hourly pay, Defendants argue that Plaintiff "has virtually no documentation" of these expenses. (ECF No. 39 at 8.) Even if true, this bears principally upon whether Plaintiff will be able to meet his burden of proof on the breach of contract claim; it does not alter the underlying nature of that claim, or the statute of limitations applicable to it. *Cf. Hersh Companies Inc. v. Highline Vill. Assoc.*, 30 P.3d 221, 223–24 (Colo. 2001) ("In determining whether a claim falls within the purview of a particular statute of limitations, consideration should be given to the nature of the right sued upon and not necessarily the particular form of action or the precise character of the relief requested." (internal quotation marks omitted)). If later evidence somehow demonstrates that these flaws alter the nature of Plaintiff's monetary claims, or make certain damages non-determinable, then it is possible the statute of limitations will restrict recovery as to certain claimed damages, but these potential complications, mostly affecting possible damages, do not defeat class certification.

Finally, the Court observes that Plaintiff's *quantum meruit* claim *is* subject to a 3–year statute of limitations. *Rotenberg*, 899 P.2d at 368 (holding *quantum meruit* claims are "not for a specific, determinable amount" but only for "an amount to be determined by the fact finder" and therefore are "not liquidated or determinable for purposes of § 13–80–103.5"). While this limitation will restrict Plaintiff's ability to ultimately recover any *quantum meruit* damages for claims that accrued more than 3 years before Plaintiff filed suit, that fact need not alter Plaintiff's requested class certification at this stage, because the *quantum meruit* claim is pled in the alternative to breach of contract, and only becomes a relevant claim if there is a later determination that "the work contract did not contain a lawful wage applicable to [those] work duties ... not covered by the landscape laborer job description." (ECF No. 1 ¶ 45.)

In sum, because the Court concludes that the core of Plaintiff's breach of contract claim is for a determinable amount, it will not restrict Plaintiff's proposed class definition as to claims arising from the years 2010–15 on the basis of Defendants' statute of limitations argument, but any recovery under *quantum meruit* will be limited by the 3–year statute of limitations provided by § 13–80–101(1)(a).

### D. Other Class Certification Issues

#### 1. Plaintiff as Class Representative

Neither side makes specific arguments regarding the appointment of Plaintiff as

class representative, except to the extent the parties' arguments regarding typicality implicitly affect this issue. Since Defendants raise no specific objection to appointing Plaintiff as the class representative, the Court views this issue as conceded. The Court also has not independently identified any reason Plaintiff should not act as class representative, and so will appoint him to that role.

### 2. Class Counsel

Although neither party specifically addresses the issue, under Rule 23(g)(1), the Court "must appoint class counsel" when certifying a class. Rule 23(g)(1)(A) states that, in appointing class counsel, the Court must consider the following:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1). In addition, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

▆▆ The Court finds that these factors weigh in favor of appointing Plaintiff's counsel as class counsel. Plaintiff has filed a Declaration from Attorney Tuddenham detailing his significant experience litigating employment claims and class actions, particularly on behalf of foreign nationals working in the United States under the H–

2 visa program. (*See* ECF No. 33–1.) It is also evident from the complaint, the discovery conducted to date, and Plaintiff's briefing on the motion for class certification, that Plaintiff's counsel has done substantial work in identifying and investigating the potential claims, has knowledge of the applicable law, and is prepared to commit adequate resources to representing the class. As to the last point, the Court also credits the f act that Plaintiff is represented by four attorneys, including Denver-based counsel and counsel affiliated with Florida Legal Services, in addition to Mr. Tuddenham, who is based in New York.

Accordingly, the Court hereby appoints the Edward Tuddenham Law Office, 228 West 137th Street, New York, NY 10030 (specifically attorney Edward John Tuddenham) as Lead Class Counsel for the Class.[7] The following law firms are appointed as additional Class Counsel: Buescher, Kelm an, Perera & Turner, P.C., 600 Grant Street, Suite 450, Denver, CO 80203 (specifically attorney Andrew Hess Turner); Florida Legal Services, Inc., 508 Lucerne Avenue, Lake Worth, FL 33460 (specifically attorney Gregory Scott Schell); and Hoffman, Sheffield, Sauseda, and Hoffman, PLLC, 600 Grant Street, Suite 450, Denver, CO 80203 (specifically, attorney Chris G. Hoffman).

### 3. Exclusion of U.S. Workers From Class

Plaintiff's requested class and sub-class definitions include both "U.S. and foreign workers hired by Defendant." (*See* ECF No. 1 ¶¶ 8–9; ECF No. 33 at 1.) Defendants did not argue that the class certification analysis should differ as between U.S.

---

**7.** The Court appoints Mr. Tuddenham as lead class counsel because, although Plaintiff's motion was silent as to which of his attorneys should be lead counsel, Mr. Tuddenham signed and filed the briefing. Moreover, Plain-

tiff submitted information regarding Mr. Tuddenham's experience and credentials but not as to his other attorneys. The Court takes this as an implicit request that Mr. Tuddenham should be identified as lead class counsel.

and Mexican national or other foreign workers, and as a consequence have waived that issue as a basis to oppose class certification. Nevertheless, exercising its independent duty to ensure compliance with Rule 23, the Court previously concluded that U.S. workers appear to be positioned very differently from Mexican nationals hired by CE under the H–2B visa program. Accordingly, the Court entered an Order directing Plaintiff to show cause as to why U.S. workers should not be excluded from Plaintiff's proposed class and sub-class definitions. (ECF No. 47.) Having reviewed Plaintiff's response (ECF No. 48), the Court concludes that factual and legal issues distinguish the U.S. workers from Mexican nationals to a degree that defeats class certification under Rule 23(b)(3) as to a class including both the Mexican and the U.S. workers.

Initially, the Court notes that Plaintiff alleges Defendants hired approximately 40 or 50 or H–2B landscape laborers in each year, but only "a few" U.S. workers. (*See* ECF No. 1 ¶ 24; ECF No. 33–2 ¶ 10.) Elsewhere, Plaintiff acknowledges that Mexican nationals "make up the bulk of the [proposed] class" (ECF No. 36 at 4), although he nowhere estimates just how many U.S. workers might be in his proposed class (*see generally* ECF Nos. 1, 34, 42, 48).

And, likely because Plaintiff is himself a Mexican national, his factual allegations focus overwhelmingly on matters pertinent to Mexican H–2B visa recipients, without relating similar details regarding the experience of any U.S. workers. (*See generally* ECF No. 33–2.) Plaintiff is not joined by any additional class representative on behalf of U.S. workers and the lack of specific factual allegations regarding the non-U.S. workers might well prevent class certification under Rule 23(a)—*e.g.*, whether numerosity considerations as to the U.S.

workers prevent class certification or whether Plaintiff can be considered a typical class representative as to the claims of non-U.S. workers. However, since Defendants have waived this issue, the Court also need not take it up, given the conclusion below that class certification is not warranted under Rule 23(b)(3) as to the U.S. workers.

### a. *Breach of Contract and Quantum Meruit Claims*

■ First, Plaintiff's breach of contract theory differs substantially as between the Mexican H–2B workers and any U.S. workers. As to the Mexican nationals, Plaintiff argues that Defendants formed an employment contract with these workers because Defendants' H–2B visa petitions and related filings constituted a voluntary offer of employment, and the Mexican workers accepted that offer by applying for the visas and traveling from Mexico to Colorado to work for Defendants. (*See* ECF No. 42 at 4–5.) Defendants argue the terms of the DOL labor certifications—*i.e.*, the contract "offer"—then became contractual duties of Defendants, including to pay the prevailing wage determined by DOL.

Plaintiff argues that Defendants were also contractually obligated to pay the U.S. workers the prevailing wage because, as a prerequisite to hiring the H–2B foreign workers, Defendants were required by regulation to recruit U.S. workers for the positions, offering no less than the prevailing wage. Specifically, Defendant was required to submit a "job order" announcing the position with the relevant state workforce agency (here, the Colorado Department of Labor and Employment), and to advertise the position in newspapers or similar sources in the Denver area. (*See* ECF No. 48 at 3; 20 C.F.R. §§ 655.15(a), 655.16; 20 C.F.R. § 655.17 (2008).) In these recruitment efforts, Defendant was required to offer terms "not less favorable

than those to be offered to the H–2B workers." (ECF No. 48 at 3; 20 C.F.R. §§ 655.17 (2008).) Defendants could only proceed with hiring the H–2B workers if and when these recruitment efforts failed to fill their hiring needs and DOL in turn certified that an insufficient number of qualified U.S. workers were available. (ECF No. 48 at 3–4; 20 C.F.R. §§ 655.20, 655.32(b) (2008).)

However, this breach of contract theory is both legally and factually distinct as to the U.S. workers. On the law, Plaintiff relies on *Cuellar–Aguilar*, 812 F.3d at 620, for the proposition that the terms and conditions in the DOL-issued labor certifications are incorporated as terms of the workers' employment contracts. (*See* ECF No. 48 at 3.) But *Cuellar–Aguilar* dealt only with foreign H–2B workers, not U.S. workers. Plaintiff cites no comparable authority supporting the proposition that the terms of the DOL certifications should be incorporated as terms of the employee contracts of U.S. workers. At best, it appears Plaintiff would need to advance parallel legal authority and argumentation as to how and why the terms of the DOL labor certifications were incorporated into the contracts of U.S. workers. This issue therefore does not appear subject to argument and resolution common to both U.S. and Mexican workers. The issues may be related, but they are not the same.

Relatedly, on the facts, Plaintiff does not advance or factually support a theory of contract formation subject to common resolution for both the Mexican H–2B workers and U.S. workers. Plaintiff argues that all the Mexican workers accepted the terms offered to them via the H–2B application process in the same way: by applying for H–2B visas, receiving those visas,

and "coming to Colorado and working for Defendant." (ECF No. 42 at 5.) This theory also finds support in case law cited by Plaintiff. *See e.g., Cordova v. R&A Oysters, Inc.*, 169 F.Supp.3d 1288, 1291 (S.D. Ala. 2016) ("certifications, attestations, and regulatory requirements created an offer of employment" to H–2B visa workers, "which they accepted by traveling to the United States and performing services"); *Western Colo. Fruit Growers Ass'n. v. Marshall*, 473 F.Supp. 693, 696 (D. Colo. 1979) (under prior regulatory regime, H–2 visa clearance order was "essentially an offer for a contract of employment. The offer is accepted by going to the western slope" and reporting to work).[8] And, since the H–2B workers could *only* be hired through this process, it appears that class-wide proof and determination will be feasible as to the validity of this breach of contract theory.

The same is not true as to the U.S. workers. Plaintiff alleges that Defendants advertised the positions and the prevailing wage to U.S. workers, as required by regulation. But Plaintiff does not make or factually support any showing that the U.S. workers were hired pursuant to this advertising. In other words, while Defendants allegedly *offered* these terms, there is no showing that the U.S. workers accepted them, or that all U.S. workers accepted job offers in the same way. Indeed, it seems likely that at least some of the U.S. workers were hired through other means, such as by "word of mouth" or through family connections with the Mexican H–2B workers, rather than by seeing and responding to the formal newspaper advertisements required by regulation. For the U.S. workers, it thus appears there would be individual issues regarding

---

**8.** The Court is not ruling on the merits or validity of Plaintiff's breach of contract theory at this time, *see infra* Section VI., but raises

these authorities here only to demonstrate that the legal issues diverge as between the Mexican H–2B workers and the U.S. workers.

whether each worker formed a contract with Defendants, and on what terms. In any event, Plaintiff offers no substantiated allegation that all the U.S. workers were hired through response to the DOL-required advertisements. Since Plaintiff bears the burden of showing Rule 23(b)(3) is satisfied, this issue defeats certification of a class which is defined to include the U.S. workers. The same analysis applies equally to the *quantum meruit* claims for tasks outside the DOL-certified job descriptions.

### b. *Statutory Claims*

As to Plaintiff's FLSA and Colorado Minimum Wage Act claims, these claims require proof that Defendants' policies amounted to *de facto* wage deductions which pushed the workers' effective wage below the rates required by statute.

Some of these allegations are the same for both U.S. and Mexican workers, regarding loading/unloading and transportation time, and the washing of uniforms. But these are the very factual issues on which the mix of common and individualized issues is most likely to require individualized showing (*e.g.*, how much uncompensated time workers spent loading, unloading, or in transit).

By contrast, the issues most likely amenable to common proof are questions *only* relevant to the H–2B workers, including Defendants' policies regarding reimbursement for visa application fees and costs of travel between Mexico and the United States. If Plaintiff proves that these costs were uncompensated *de facto* pay deductions, that alone could be dispositive of the merits of Plaintiff's minimum wage claims as to Mexican H–2B workers, but would be irrelevant to the U.S. workers. Thus, this is not simply an issue of individualized damages determinations, as Plaintiff argues. The Court therefore concludes that as to a proposed class including both U.S. and Mexican national workers, common issues do not predominate over individual ones.

### c. *Class Management*

Finally, the also Court concludes that "likely difficulties in managing a class action" would arise if the class were to include both U.S. and Mexican workers, and this weighs against class certification. Fed. R. Civ. P. 23(b)(3)(D). This is true because case management for a class including both U.S. and Mexican workers would require separate approaches and procedures to resolve the distinct factual and legal issues identified above. Further practical challenges are illustrated by Plaintiff's proposed approach to class notification, which focuses on the facts pertinent to Mexican workers, with little attention to class management procedures relevant to U.S. workers. (*See generally* ECF No. 36 at 4–6 (arguing for alternative notice procedures, *inter alia*, given "problems with the Mexican postal service" and suggesting "contract[ing] with an organization in Mexico" to handle distribution of class notice).) At a minimum, the Court concludes that both the timing and mechanics of accomplishing adequate class notification and subsequent class management tasks would differ significantly as between U.S. and Mexican workers. This would compound the difficulties of resolving their different claims and tends to show that a single class action is not superior to other methods of adjudicating any claims by U.S. workers. *See* Fed. R. Civ. P. 23(b)(3).

\* \* \*

In sum, the Court concludes that these issues weigh against class certification under Rule 23(b)(3) for a class incorporating both U.S. and Mexican workers, and will therefore certify a class that only includes the Mexican workers (including Plaintiff,

who must remain a representative member of the class for the class action to proceed).

## V. FLSA NOTICE

### A. Legal Standard

■■■■ The FLSA permits collective actions where the allegedly aggrieved employees are "similarly situated." 29 U.S.C. § 216(b). Whether employees are similarly situated is judged in two stages: a preliminary or "notice stage" (at issue here) and then a more searching, substantive stage, usually after the close of discovery. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001). At the notice stage, a plaintiff requires "nothing more than substantial allegations that the putative [collective action] members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (internal quotation marks omitted); *see also Boldozier v. Am. Family Mut. Ins. Co.*, 375 F.Supp.2d 1089, 1092 (D. Colo. 2005) (applying *Thiessen* standard). The standard for certification at this stage is a lenient one. *See Thiessen*, 267 F.3d at 1103; *Williams v. Sprint/United Management Co.*, 222 F.R.D. 483, 485 (D. Kan. 2004).

■■■ If a plaintiff meets this standard, the Court may order the defendant to provide contact information for all employees and former employees that may be eligible to participate in the collective action, and the Court may approve a form of notice to be sent to all of those individuals. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169–74, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Such notice is often necessary because, unlike class actions under Federal Rule of Civil Procedure 23, collective actions under the FLSA require a party to opt in rather than opt out. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to

become such a party and such consent is filed in the court in which such action is brought."). Obviously current or former employees cannot opt in if they do not know about the pending action.

### B. Analysis

For largely the same reasons that class certification is warranted under Rule 23(b)(3), the Court concludes that Plaintiff has also met the comparatively lenient standard of FLSA certification at this notice stage. Plaintiff alleges that his claims arise from policies of Defendants that were applied in common to himself and other workers, including the alleged requirement for workers to spend uncompensated time loading, unloading, and traveling to job sites, the alleged requirement for workers to pay expenses Plaintiff claims operated as *de facto* wage deductions, Defendants' alleged policy or practice of assigning at least some of those hired as landscape laborers to perform other roles without additional compensation, and Defendants' actions as to all the landscape laborers in not paying the new prevailing wage rate for approximately one month after July 10, 2013.

■■■ As with their arguments as to Rule 23 class certification, Defendants' arguments point to factual and evidentiary disputes with Plaintiff's allegations. Defendants claim that CE *did* pay visa application fees, that they were willing to reimburse travel expenses, but were not provided appropriate receipts, and that they did not generally require workers to spend uncompensated time loading and unloading each day. (ECF No. 39 at 12.) However, as with Rule 23 certification, at this phase of FLSA conditional certification, "the Court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims." *Bryant v. Act Fast Delivery of Colorado, Inc.*, 2015

WL 3929663, at *2 (D. Colo. June 25, 2015).

Defendants arguments therefore do not defeat Plaintiff's showing, which is sufficient to meet the standard for FLSA certification at the notice stage. The Court will therefore grant Plaintiff's request for issuance of FLSA Notice and will address the form, logistics, and timing for that notice by separate order on Plaintiff's Motion for Approval of Class Notice, Distribution Method and Tolling Calculations. (ECF No. 35.)

## VI. OTHER LEGAL ISSUES

In opposing class certification, Defendants argue that a number of Plaintiff's claims should fail on their merits as a matter of law.[9] Indeed, these arguments constitute the majority of Defendants' arguments against class certification, while the arguments as to the Rule 23 factors appear to be a comparative afterthought in Defendants' briefing. (*Compare* ECF No. 39 at 4–12 (arguing legal objections to Plaintiff's claims) *with id.* at 13–14 (arguing Rule 23 factors).)

As noted above, in ruling on class certification, the question is not whether a plaintiff has stated a cause of action, *Anderson*, 690 F.2d at 799, and the Court does not pass judgment on the merits of the case, only analyzing whether the requirements of Rule 23 are met, *Stricklin*, 594 F.3d at 1194.

Defendants' legal arguments here therefore do not present a basis to deny class certification. To the contrary, the presence of significant and potentially dispositive legal issues common to all class members tends to support Plaintiff's request for class certification under Rule 23(b)(3).

Nonetheless, although they do not present a grounds to deny class certification, these issues were extensively briefed by the parties and are likely to arise at a later phase of this case. The Court will therefore briefly identify and addresses these issues below.

### A. Validity of Breach of Contract Claim

Defendants argue that Plaintiff's breach of contract claims fail as a matter of law because, they argue, neither DOL's prevailing wage determination nor any other aspect of the H–2B visa certification created enforceable terms of a contract with the class members. Defendants further argue that the law does not create an implied private cause of action for Plaintiff to bring a suit to enforce the DOL-determined prevailing wage. (*See generally* ECF No. 39 at 4–6; ECF No. 44 at 2–6.) Plain tiff argues that the prevailing wage approved by the H–2B labor certifications was incorporated as a term of the workers' employment contracts with CE and that they may sue to enforce that contract. Each side cites prior case law on point that has resolved this legal issue in its favor, but neither party has identified a Supreme Court or Tenth Circuit case that controls the issue here.

Since resolution of this legal question does not bear directly on class certification, the Court does not resolve it at this time. For present purposes it is sufficient that the Court does not find Plaintiff's claims so frivolous that class certification would be a waste or time or an obvious legal error. To the contrary, numerous courts have allowed H–2B workers in the same posture as Plaintiff to proceed on just such on a breach of contract theory.[10]

---

9. Defendants argue these same grounds as a basis for summary judgment. (*See* ECF Nos. 39 & 44.) The Court has denied that motion by separate order. (ECF No. 50.)

10. *See, e.g., Cuellar–Aguilar*, 812 F.3d at 620

Since the Court is separately denying Defendants' motion for partial summary judgment on this grounds, this argument does not present a bar to class certification, although the Court recognizes it will likely be necessary to resolve this issue at a later stage of the litigation and on a better presented factual record.

**B. 2013 Prevailing Wage Increase**

Defendants also argue that DOL's determination of a higher prevailing wage applicable to the H–2B landscape laborers employed by CE as of July 2013 was *ultra vires* and that CE had no obligation to pay the increased wage rate. (ECF No. 39 at 9–11.) Thus, Defendants argue that Plaintiff's breach of contract claim fails as a matter of law to the extent it seeks payment of the higher wage. Plaintiff raises counterarguments that CE *was* obligated to pay the increased rate. (ECF No. 42 at 10–12.)

Again, the presence of a validly contested legal issue in the case does not defeat Plaintiff's request for class certification. *See Stricklin,* 594 F.3d at1194. Moreover, even if Defendants ultimately prevail on this argument, at most it appears to limit the damages available to Plaintiff and other class members as to the months between July 2013 and the end of that work

("Like a minimum-wage law, the Department of Labor regulations imposed upon [defendant] a legal obligation to pay its H–2B employees no less than the prevailing wage. In light of this legal duty, we hold that the terms of the labor certification applications, including the agreement to pay the prevailing wage … form a part of the workers' contracts."); *Moodie v. Kiawah Island Inn Co., LLC,* 124 F.Supp.3d 711, 725–28 (D.S.C. 2015) (denying motion to dismiss similar state law breach of contract claims by H–2B workers; holding "the law and regulations applicable to the H–2B program at the time were part of the contract" and plaintiffs therefore stated a claim against defendant for failure to pay the prevailing wage); *Cordova v. R & A Oysters,*

year (or the date on which Defendants began paying the increased prevailing wage). In other words, this argument would not dispose of the totality of any of Plaintiff's claims or theories, or provide a reason to deny class certification. Rather, this argument would at most later reduce the recovery available to class claimants, if they otherwise prevail on the issue of contract liability.[11] Thus, Defendants' arguments, even if correct, do not defeat class certification.

# VI. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion for Issuance of FLSA Notice and for Class Certification (ECF No. 33) is GRANTED IN PART and the Court will certify the class definitions below, which differ from those Plaintiff requested.

2. The Court CERTIFIES a Class with the following definitions:

 a. As to Plaintiff's breach of contract claim:

 All foreign workers hired by CreativExteriors, Inc. under terms of the H–2B visa program to fill jobs described in its 2010, 2011, 2012, 2013,

*Inc.,* 101 F.Supp.3d 1192, 1198–99 (S.D.Ala. 2015) (denying motion to dismiss and rejecting rationale of cases on which Defendants also rely here, including *Bojorquez–Moreno,* 92 F.Supp.3d at 459).

11. The same is true for Defendants' arguments as to the validity of Plaintiff's claims that laundry expenses constitute *de facto* pay deductions. Even if Defendants are correct on this issue, that at most limits available damages claims, but it does not bear on the other claims of *de facto* pay deductions. This issue therefore does not present a bar to certifying a class as to Plaintiff's overall claims for alleged underpayment of legal wages.

**1094**

2014, and 2015 labor certification applications.

b. As to Plaintiff's FLSA and Colorado Minimum Wage Act claims:

All foreign workers hired by CreativExteriors, Inc. under terms of the H–2B visa program to fill jobs described in its 2013, 2014, and 2015 labor certification applications.

3. Plaintiff, Venancio Torres–Vallejo, is hereby APPROVED as class representative.

4. Pursuant to Federal Rule of Civil Procedure 23(g), the following law firms are APPOINTED as class counsel:

a. Lead Class Counsel: Edward Tuddenham Law Office, 228 West 137th Street, New York, NY 10030 (specifically Edward John Tuddenham);

b. Additional Class Counsel:

i. Buescher, Kelman, Perera & Turner, P.C., 600 Grant Street, Suite 450, Denver, CO 80203 (specifically attorney Andrew Hess Turner);

ii. Florida Legal Services, Inc., 508 Lucerne Avenue, Lake Worth, FL 33460 (specifically attorney Gregory Scott Schell);

iii. Hoffman, Sheffield, Sauseda, and Hoffman, PLLC, 600 Grant Street, Suite 450, Denver, CO 80203 (specifically, attorney Chris G. Hoffman).

5. This action is CONDITIONALLY CERTIFIED as a collective action under 29 U.S.C. § 216(b).

6. Plaintiff is GRANTED LEAVE to issue notice of his FLSA action to the subclass of similarly-situated workers defined in 2.b., above. The form of notice and the method and timing of distribution will be addressed by separate order.

7. Consistent with the Court's prior Order (ECF No. 41), no later than this **Monday, November 28, 2016**, the parties SHALL CONTACT the Chambers of U.S. Magistrate Judge Craig B. Shaffer to set a Status Conference.